# Trustees of the Poor of Queen Annes County *vs.* Mary T. N. Pratt.

A sale of real estate after marriage, under an execution upon a judgment rendered against the husband *prior* to the marriage, will defeat the widow's dower, even when sought to be recovered by an *action at law*.

The arrest of the defendant in the judgment under a *ca. sa.* issued thereon prior to the marriage, neither waives nor suspends the lien of the judgment so as to allow the dower to attach upon the lands.

An entry "not called by consent," made on the docket upon the return of *cepi* to a *ca. sa.*, avoids the presumption of satisfaction of the judgment which might otherwise result from the mere arrest of the party upon the *ca. sa.*

The objection to a sheriff's sale that two tracts of land not contiguous were sold in mass, instead of separately, cannot be taken advantage of by the widow of the defendant in the judgment, in an action at law against the alienee of the purchaser at such sale for her dower out of one of such tracts.

APPEAL from the Circuit Court for Queen Annes county.

This was an action at law for *dower* in a tract of land called *"Ruthburgh,"* brought by the appellee, as widow of her late husband, Henry R. Pratt, against the appellants. Plea, *ne unques seisie que* dower. The case was submitted to the court below upon an agreed statement of facts, the material parts of which are these: Henry R. Pratt was married to the appellee in May 1819, and was, before and at that time, seized in fee of two tracts of land in Queen Annes county, distant several miles from each other, the one called *"Ruthburgh,"* containing three hundred and thirty-five acres, and the other called *"Pickering,"* containing three hundred and ninety acres. At the time of this marriage dower had been assigned to the mother of Henry R. Pratt, who died in 1832, in the buildings and garden of *"Ruthburgh."* In June 1818, Richard T. Earle recovered a judgment in Queen Annes county court against Henry R. Pratt for $510.32, with interest and costs, upon which a *ca. sa.* issued in October following, returnable to the October term 1818 of said court, which was then returned *"cepi,* satisfied sheriff $300.33⅓." In 1819, another *ca. sa.* issued, returnable at the October term of that year, which was returned *"cepi,"* and, on motion of the plaintiff, the court entered upon the docket: "Default demanded and judgment against sheriff." On the 26th of April 1820, the original judgment was superseded, and, in March 1821, after the expiration of the supersedeas, another *ca. sa.* issued against Pratt, returnable to May term of that year, which was returned, "satisfied plaintiff's attorney $200," and entry made on the docket, "not called by consent." A *scire facias* was then issued to revive the judgment, and, on the 28th of May 1825, the *fiat* was entered with the further entry, "payments, if any, since original judgment to be allowed," and, in the same year, a *fi. fa.* was issued and levied upon the two tracts of land above mentioned, and, after several regular and successive writs of *vendi. exponas,* the same were, on the 4th of January 1827, sold at sheriff's sale to Philip Wallis, for $3100, and a special return of the sale made to the May term of that year. It was also admitted, that the *fi. fa.* which issued upon the

entry of *fiat* was credited with the $200, above mentioned, as paid to the plaintiff's attorney, but not with the $300.33⅓ paid to the sheriff, nor was this latter sum credited upon any of the succeeding writs of *vendi.;* that at the time of the sheriff's sale there were in his hands other executions against Pratt, on judgments recovered since his marriage, which had been levied upon the same tracts of land, and that the sheriff, in his returns to these executions, refers to the return to the execution upon the judgment before marriage. It was further admitted, that Wallis was not the original plaintiff in any of these judgments, but obtained assignments of all of them before *fi. fas.* were issued thereon; that at the time of the sheriff's sale there was due on the judgment recovered before marriage $691.45, not crediting the $300.33⅓, and including this sum as a credit, there was due $236.56; that the sheriff's deed includes both parcels of land at the price mentioned in the return, and does not name a separate price for each parcel, and that "*Ruthburgh*," out of which dower is claimed in this action, has been conveyed by regular conveyances from Wallis to the defendants; that Henry R. Pratt died in 1852, before the commencement of this suit; and that "*Ruthburgh*," at the time of the sheriff's sale, was worth about $3500, and "*Pickering*" about $780.

The court below, (HOPPER, J.,) gave judgment for the plaintiff, from which the defendants appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*D. C. H. Emory* for the appellants, argued:

1st. That as the appellants derive title to the land out of which dower is claimed from a purchaser at sheriff's sale, under an execution upon a judgment recovered against the husband *prior* to the marriage, the widow is not entitled to dower. The widow can have dower of no greater or better estate than the husband held at some period during coverture, and her right attaches, subject to all incumbrances, at the time of the marriage, or attaching with the purchase by the

husband. The wife takes her estate of the husband; it is but a part of his. The part cannot be greater than the whole, nor can the estate derived be better than that from which it springs. As a general principle, her dower is liable to be defeated by every subsisting claim or incumbrance in law or equity existing before the inception of the title, and which would defeat the husband's seisin. An agreement by the husband to convey, will, if enforced in equity, extinguish the claim to dower. 4 *Kent's Com.*, 50. 2 *Powell on Cont.*, 57. 3 *G. & J.*, 398, *Cowman vs. Hall.* 2 *Ves., Sen.*, 631, *Hinton vs. Hinton.* So of an estate limited to such uses as the husband shall appoint, and in the meantime to himself, by which he is invested with the fee, yet an appointment made, the dower falls. *Co. Litt.*, 217. 4 *Kent's Com.*, 51. 10 *Ves.*, 250, *Maundrell vs. Maundrell.* So of an entry for condition broken, eviction by title paramount, forfeiture by tenant in tail for alienation in fee, (*Co. Litt.*, 31, 217, 241,) exchange seisin for an instant only, the vendor's lien for purchase money, and lands purchased, during coverture, and at the same time mortgaged for the purchase money. 15 *Johns.*, 461, *Stow vs. Tift.* 4 *Mass.*, 566, *Holbrook vs. Finney.* So in case of a lease for a term by the husband before marriage, the rights of the lessee are paramount to those of the widow, whose claim to dower is subject to the lease. *Co. Litt.*, 326. 1 *Hilliard on Real Prop.*, 134. 2 *Crabb on Real Prop.*, secs. 1159, 1175. 1 *Greenlf's Cruise*, 178, 203. *Roper on Husband & Wife*, 162, 371, 386, 387, 415, 416. So when lands descended to the husband and afterwards are sold to pay the debts of the ancestor. And so, as we now contend, of the lien of a judgment existing in full force at the time of marriage, and a sale after marriage by virtue of an execution on such judgment. In *Scott vs. Howard*, 3 *Barb.*, 321, Judge Paige says: "Such right of dower was not affected or prejudiced by any subsequent act of his, or by any judgment subsequently recovered against him; *but it was subject to a prior judgment.*" This case fully sustains the view we are endeavoring to enforce; for the court there decided, that although the senior judgment had lost its lien so far as the

junior judgment was concerned, it still had a preference to the right of dower. This point is also sustained by the case of *Lane & Wife, vs. Gover,* 3 *H. & McH.,* 394. And in *Mantz vs. Buchanan,* 1 *Md. Ch. Dec.,* 208, Chancellor Johnson says: "The law intends to give the widow one-third of the husband's real estate by way of dower and as a provision for her support, *but she takes it subject to liens created prior to the marriage.*"

2nd. We also contend, that the lien of this judgment is in no respect waived, suspended or affected by the several *ca. sas.* issued thereon, or the *supersedeas,* or the *scire facias,* or the returns of the sheriff, or the action of the court in the premises, so as to admit the right of dower to attach. This proposition is clearly sustained by the following cases: 3 *H. & J.,* 496, *Ford vs. Gwinn.* 5 *Pet.,* 357, *Tayloe vs. Thomson.* 4 *Gill,* 29, *Harden vs. Campbell.* 1 *Md. Rep.,* 78, *Lawson vs. Snyder.* 5 *G. & J.,* 102, *Sasscer vs. Wilkins.* 2 *Gill,* 481, *Hardesty vs. Wilson.*

3rd. That the title of the appellants is perfect and complete, and cannot be defeated on the ground that the sale was a fraud on the widow. It is said that two parcels of land, of considerable value and several miles apart, were sold together, or *in the lump,* but the statement of facts does not contain such an admission, nor can such a deduction be fairly or legitimately made. The sheriff's return does not disclose whether the two parcels were sold separately or together. It was not necessary that the sheriff should set out in his return the *manner* of sale, and it is not done. He reports the fact of sale, the name of the purchaser, and the amount for which the property sold, these alone being the necessary ingredients of the return. That each parcel was separately put up and bid off is not inconsistent with the return, and the presumption is that such course was pursued; for the officer is presumed to have done his duty. 3 *G. & J.,* 359, *Hanson vs. Barnes.* If the tracts were not sold separately the fact ought to have been stated and not left to conjecture. The law regards judicial sales with favor, and will make every reasonable intendment to sustain them. 8 *G. & J.,* 349. 1 *Gill,* 345, *Tomlinson vs.*

*Devore*. Upon a statement of facts the court will make no inferences of facts, unless the facts inferred are self-evident and irresistible conclusions from the facts stated—undeniable deductions from the facts agreed on—or are strictly inevitable. 2 *H. & G.*, 114, *Stewart vs. The State*. *Ibid.*, 320, *Reeside vs. Fischer*. 3 *G. & J.*, 158, *Hysinger vs. Baltzell*. 6 *Do.*, 259, *Lewis vs. Hoblitzell*. 7 *Wend.*, 83, *Jackson vs. Roberts*. That the sheriff in this case put up and sold both parcels together, is by no means a self-evident or inevitable conclusion—an undeniable or strictly irresistible deduction. We say, therefore, 1st, the facts do not authorise the inference of fraud; 2nd, if they did, the court cannot make the inference; and 3rd, if they could, the appellants are *bona fide* purchasers without notice, and their title cannot be defeated or affected by this claim for dower.

*Carmichael* and *Brown* for the appellee, argued:

1st. That the facts, that a judgment was recovered against a defendant in a court of record, who was at the time unmarried, and also seized in fee of lands situate in the county in which it was rendered, that he afterwards married, and that after his marriage the plaintiff sued out a *fi. fa.* thereon, in virtue whereof the land was sold, are not legally sufficient, in a suit for dower by the defendant's widow, to sustain the plea of *ne unques seisie que dower*, nor do they constitute a valid plea in bar when specially pleaded. *Act of* 1818, *ch.* 193, *sec.* 10. *Statute of* 13 *Edward I., ch.* 18. 4 *G. & J.*, 1, *Canal Co. vs. The Rail Road Co.*

2nd. That when a judgment is rendered against a defendant before his marriage by a court of record, and after marriage he is arrested on a *ca. sa.* issued on such judgment, the arrest during its continuance is a waiver of the lien of the judgment, so as to allow the lien of a junior judgment and the inchoate right of dower to attach in priority, and that the effect of the election by the plaintiff, with the consent of the defendant, at the return of the *ca. sa.* to discharge the latter, is to give a new lien of that date to the judgment. 4 *Gill*, 29, *Harden vs. Campbell*. *Sewall's Sheriff*, 198. 14 *East.*, 468, *Slackford*

*vs. Austen. Act of 1807, ch. 115. 9 Gill, 378, Chew vs. Farmers Bank. Statutes 21st James I., ch. 24; 8th & 9th Wm. III., ch. 27, sec. 7; 5th George II., ch. 7. Act of 1789, ch. 42. 13 Johns., 533, Spencer vs. Benedict. 7 Term Rep., 420, Tanner vs. Hagve.*

3rd. If neither of the two preceding points can be sustained, yet we maintain, that where two parcels of land of different values, and not contiguous, are sold in mass in virtue of an execution which would have been satisfied by the sale of the parcel of lesser value, it is such an irregularity as will not bar the defendant's widow of her dower in a part of the parcel of larger value in a suit against the alience of the purchaser at sheriff's sale. *8 G. & J., 359, Marshall vs. Greenfield. 7 G. & J., 495, Nesbitt vs. Dallam.*

MASON, J., delivered the opinion of this court.

This is an action at law, for dower, instituted by the appellee.

The prominent and controlling question of the case is, whether a sale of real estate, under an execution upon a judgment rendered against a party prior to his marriage, would defeat the claim of his widow to dower?

This question is conclusively settled, upon authority, in the affirmative. *Kent,* in his *Commentaries, 4th Vol., page* 50, thus states the law: "As a general principle, it may be observed that the wife's dower is liable to be defeated by every subsisting claim or encumbrance, in law or equity, existing before the inception of the title, and which would have defeated the husband's seisin."

The same doctrine is more broadly affirmed in the case of *Greene vs. Greene,* 1 *Ohio Rep.,* 542. In speaking of the widow's right to dower, Judge Sherman says: "Her estate is but part of his, is derived from him, and must be subject to all incumbrances existing against it at the time of the marriage, or the acquisition by the husband."

The same doctrine is announced in the case of *Scott vs. Howard,* 3 *Barb. Rep.,* 319, and also in our own chancery court, in the case of *Mantz vs. Buchanan,* 1 *Md. Ch. Dec.,* 202, as well as a number of other well adjudged cases.

But the soundness of this doctrine seems not to be denied by the appellee's counsel, but it is contended, that such a defence cannot be resorted to in an action at law, but is only availing in equity, if it can be relied on at all.

We think the contrary is settled by the General Court of this State, in the case of *Lane vs. Gover*, 3 *Har. & McH.*, 394. That was a case, like the present, *at law*, and the court permitted a sale under a lien subsisting prior to marriage, to defeat the claim of the widow to dower, and the mere circumstance that the lien bound the land in the lifetime of the husband's ancestor, does not affect the principle, as the appellee's counsel supposes, that such a defence would be availing at law.

It is further contended, that the defence relied upon in this case is not availing, because the lien of the judgment upon which the sale was based has either been waived or defeated, by proceedings had upon it subsequent to its rendition; or that the sale by the sheriff was irregular and illegal, and therefore conferred no title upon the purchaser.

It is contended, in the first place, by the appellee's counsel, that the arrest of the defendant in the judgment, under a *ca. sa.* issued thereon, prior to the marriage, either amounted, in law, to a satisfaction of the judgment, or waived or suspended *the lien* thereof, so as to allow the dower to attach upon the lands. The contrary principle has been adopted in this State, as well as by the Supreme Court of the United States, in the case of *Tayloe vs. Thomson*, 5 *Peters*, 357. In that case the court say: "The greatest effect, which the law gives to a commitment on a *ca. sa.*, is a suspension of other remedies on the judgment during its continuance." It is not said that the *lien* is suspended, but, on the contrary, the court expressly say that the plaintiff's "remedies are cumulative and successive, which he may pursue until he reaches that point at which the law declares his debt satisfied. A *ca. sa.* executed does not extinguish it. If the defendant escape or is discharged by operation of law, the judgment retains its lien and may be enforced on his property:" again, "it retains its lien until the plaintiff has done or consented to some act which amounts in law to payment,"

And also in the case of *Ford vs. Gwinn,* 3 *Har. & John.,* 496, a *sci. fa.* was issued to revive a judgment, to which the terre-tenant pleaded, that the defendant had been arrested on a *ca. sa.* and had escaped, and that judgment had been rendered against the sheriff, to which the plaintiff demurred, and the demurrer was sustained.

And more recently the same principle has been recognised in *Lawson vs. Snyder,* 1 *Md. Rep.,* 71. The record in the case now before us shows, that to the last *ca. sa.* issued upon the judgment the entry made on the docket was "not called by consent." This entry avoids the presumption of satisfaction which might otherwise result from the mere arrest of the party upon *ca. sa.* See also the *Act of* 1789, *ch.* 42.

We are therefore of the opinion, that the proceedings upon the *ca. sa.* neither suspended the lien of the judgment so as to allow the dower to attach, nor does it afford a legal presumption of the satisfaction of the judgment.

We do not understand the appellee's counsel to urge that the title of the appellants was not good as against Pratt, the defendant in the judgment, and against his heirs, notwithstanding the supposed irregularity of the proceedings. Having allowed the proper time to pass at which these objections should have been made, they cannot afterwards be permitted collaterally to raise the same questions. But as the wife was not privy to the proceeding, and having at the time only an inchoate, contingent right in the property, it is supposed she could have made no objection to the irregularity of the proceedings, and that therefore she should not be precluded from making them now. Whether this be true or not in every case, it is not necessary for us now to decide. The objection sought now to be set up to the sale is, that the property, consisting of two tracts of land, not contiguous, were sold in mass, instead of separately, and the objection is made upon the authority of the case of *Nesbitt vs. Dallam,* 7 *Gill & John,* 494. Whether this be a good objection or not, it is one that cannot be taken advantage of by the wife of the judgment defendant in a proceeding like the present.

Objections to the irregularity of a sheriff's sale rest upon the

ground, that the parties interested were, or may have been, prejudiced by such irregularity. An objection to a sale upon such ground does not propose to defeat the lien of the judgment, but merely to vacate the sale under it. If this had been done at the proper time, and a resale ordered, how can we assume, as we would be required to do in order to sustain a proceeding like the present, that from a fair and regular sale of *one* of the tracts there would have been realized sufficient to have paid the debt, or, even if we could so assume, we should be required further to assume that the tract which could thus have been sold for enough to satisfy the execution, would have been that tract called "Pickering," instead of the other called "Ruthburgh," out of which latter tract the plaintiff now seeks to recover her dower? These difficulties, it will readily be seen, clearly show, that if the wife could have any standing in a court of justice to call in question the regularity of this sale, she can have no such standing in a proceeding like the present.

*Judgment reversed, but no procedendo.*